WELLS surviving executor of HILL *against* STEWART.

THIS was an action for money had and received, tried before *Brackenridge* J. at a *Nisi Prius* in *November* last, when a verdict was found for the plaintiff, damages 457 dollars 52 cents.

Upon a motion for a new trial, his honour reported the facts to be, that on the 8th of *July* 1796, the house of *Le Mar, Hill, Bisset & Co.* of *Madeira,* shipped two pipes of wine to *Walter Stewart,* Esq. in *Philadelphia,* and for his account and risque. The wine did not arrive until the 29th of *August,* after the death of general *Stewart.* The freight was paid by his executors in *September* 1796; and *Francis West,* one of them, in his private capacity gave bond for the duties. General *Stewart's* estate was ascertained to be insolvent sometime in the year 1796. At the time of the ar-

*The house of A and B at Madeira, shipped two pipes of wine to Philadelphia for account and risque of S, to whom a bill of lading was sent. The wine did not arrive until after the death of S, when his executors declined taking it, and requested C, who was concerned in the Madeira house, to keep it till it was paid for. It remained in the cellar of C until*

after his death. It was then delivered by the agent of the executors of *C* to the wife of *S,* upon her alleging that it was her property, and that *C* had kept it in his cellar for her use. The wife of *S* sold the wine, and received the price.

*Held,* that the executors of *C* could not maintain an action against the wife of *S,* for the proceeds of the wine.

rival of the wine, Mr. *West* requested *Henry Hill*, who was in some way concerned with or for the *Madeira* house, to take charge of it, and not to part with the possession till it was paid for. It was accordingly placed in his cellar. When the duties fell due, Mr. *West* paid them, and charged them to Mr. *Hill*. The wine remained in Mr. *Hill's* cellar, until his death in the year 1798; sometime after which, Mrs. *Stewart*, the defendant, and one of the executors of general *Stewart*, demanded it of *Gideon H. Wells*, the agent of Mr. *Hill's* executors, *as her own property;* and upon her producing an affidavit, the nature of which did not distinctly appear, he delivered the wine to her order, without the knowledge of *Hill's* executors. By Mrs. *Stewart* the wine was delivered to a wine merchant, who sold it and paid her the proceeds.

The counsel for the defendant requested the Court to charge the jury, that the action would not lie, because the principals alone, the house of *Le Mar, Hill, Bisset & Co.*, could maintain the action, and not Mr. *Hill*, the agent, or his executors; or if *Hill* was a partner, then it should have been brought by the survivors, against Mrs. *Stewart* as executor, because by the bill of lading the property was vested in her husband. But the Court directed the jury, that under the circumstances of the case the action was well brought.

*Ingersoll* and *Lewis* for the defendant. The action is wrong both as to plaintiff and defendant.

As to plaintiff's testator, he made no contract with either the defendant or *Walter Stewart*. The contract was made by his principals in *Madeira*. If he was factor merely, the factor cannot sue where the principal makes the contract. If he was one of the principals, on his death, the right of action survived. Mr. *Hill* did not even make himself responsible to that house, by the delivery. *Gideon H. Wells* alone did that. Of course there is no right of action in his executors on the ground of liability over. A recovery in this action is no bar to a suit by the house in *Madeira*. As to the defendant, she received the wine as executor, the wine having been in fact transferred to her husband by the

bill of lading. *Evans* v. *Marlett* (a). She should therefore be sued as executor. But if a new contract was made by her individually, it was made with the executors of *Hill* individually, and not in their representative capacity. *Hill* was dead at the time. Either way there must be a new trial.

*Rawle* for the plaintiff. Justice has been done by the verdict, and therefore a new trial should not be granted upon a point of form.

The action lies against the defendant individually, because she claimed the wine, sold it, and received the proceeds in that character. It was not accepted by General *Stewart's* executors, upon its arrival, but was placed in Mr. *Hill's* hands to secure the payment. Of course the bill of lading did not transfer the property to General *Stewart*.

It lies by the executor of *Hill*, because he held the wine as a pledge to secure the payment of the purchase money. It was received by his executors as his qualified property; and they may maintain an action for the value, because his estate is liable for the forthcoming of the pledge. The *Madeira* house cannot maintain an action, because the defendant is a stranger to them.

It also lies against her by the executors, because she relied upon a contract and agreement between her and Mr. *Hill*, and obtained the wine on that ground.

*In Reply* to Mr. *Rawle's* first observation, it was said, that where a verdict is owing to a mistake of the Judge, it is of no consequence what the merits of the case are.

TILGHMAN C. J. after stating the facts, delivered his opinion as follows:

It appears from the evidence, that the wine, not having been delivered to General *Stewart's* executors, during the life of Mr. *Hill*, was at the time of Mr. *Hill's* death, the property of *Le Mar*, *Hill* and *Bisset*, whose agent he was. It has been suggested, that it was in fact delivered to Mrs. *Stewart*, one of the executors, because Mr. *Hill* kept it for her in his cellar at her particular request. But this suggestion not being supported by any evidence, and being incon-

1812.

WELLS
*v.*
STEWART.

(a) 1 *Lord Ray.* 271.

1812.

WELLS
v.
STEWART.

sistent with Mr. *West's* testimony, is not to be regarded. When the wine was delivered by *Gideon H. Wells* to Mrs. *Stewart*, it was delivered to her either as executrix of General *Stewart*, or on her own private account. Take it either way, I do not see how this action can be supported by Mr. *Hill's* executors. If the delivery was to Mrs. *Stewart* as executrix of her husband, the action should have been brought against the executors. If it was delivered on her own account, a new contract arose, not between Mr. *Hill* and her, for he was dead, but between her and *Le Mar & Co.*, whose property the wine was. If Mr. *Hill* had accounted for the wine with *Le Mar & Co.*, and thus made it his own, perhaps the action might have been supported in the name of his executors, because the money when recovered, would have been assets in their hands. But there is not the least evidence of any act, by which the property could have vested in Mr. *Hill*. Nor do I see how it could be vested in those persons who were his executors, for they never accounted for it to *Le Mar & Co.*; and even if they had undertaken to deliver it without orders, by which they rendered themselves responsible to *Le Mar & Co.*, this responsibility would have been incurred not as executors of Mr. *Hill*, but in their own private capacity, and in that case, the action, if maintainable at all by them, (as to which I give no opinion) must have been brought in their own names, and not as executors. But it appears to me, that the most proper way of bringing suit, would have been in the names of *Le Mar & Co.* whose property the wine undoubtedly was at the time of its delivery to the defendant. The plaintiff's counsel contended that the action was maintainable, on the ground of a sale by an agent, in which case the action will be either in the name of the principal or the agent. But supposing the sale to have been made by the plaintiffs as agents of the *Madeira* house, (of which there is no proof,) still the action should have been brought in their own names, and not as executors, for their testator had nothing to do with their agency, nor could his estate be in any manner involved in their transactions. Mr. *Hill's* agency ended with his life. At the time of his death, the wine remained in his cellar, the property of his principals; and if after his death his executors became the agents of the same principals, it was an affair

in which his estate was unconcerned. Upon the whole, I am clearly of opinion, that the plaintiff was not entitled to a verdict, and therefore there should be a new trial.

YEATES J. It cannot be denied, that unless Mr. *Hill* could have supported this action in his life time against Mrs. *Stewart* in her own right, it cannot now be maintained at the suit of his personal representative. I see no ground of action on the part of *Hill.* He was consignee and agent of the house at *Madeira,* who shipped the wine on account, and at the risk of *Walter Stewart,* but it did not arrive here until after his death. I find no testimony from which the jury could infer a *sub-contract,* as it is called, between Mr. *Hill* and Mrs. *Stewart.* The former stored it, as we may presume, from some arrangement made between him and the executors of *Stewart,* and kept it in his possession until the time of his death. The two pipes of wine were afterwards delivered to the defendant by *Gideon H. Wells,* as the general agent of the executors of Mr. *Hill,* without any particular authority for that purpose, in consequence of some representations made by her that the wine was her own property, founded on some affidavit, the particulars of which we are wholly uninformed of. It is not pretended, that there was any sale from *Hill* to the defendant in her own right, and consequently there is no ground of suit as between the present parties. But if the original contract respecting the two pipes of wine, was rescinded, either by mutual consent, or by *Stewart's* executors finding themselves unable to discharge the amount thereof out of their testator's assets, and Mrs. *Stewart* afterwards obtained the possession thereof, I have no hesitation in declaring my opinion, that she thereby has made herself responsible to the surviving partners of the *Madeira* house.

I am of opinion, that the present verdict cannot be supported on principles of law, and therefore should be set aside.

BRACKENRIDGE J. I am under the necessity of dissenting, *totis viribus contra,* as the reporters sometimes say. The leading facts of this case are these. A *Madeira* house had shipped wine for *Walter Stewart* of *Philadelphia,* the

wine not paid for. They had signed a bill of lading, and addressed a letter of advice to *Stewart*. Before the arrival of the wine, *Stewart* had deceased, and his estate was said to be insolvent, as it has since appeared to be. An acting executor of *Stewart*, (*West*) declined paying duties or taking the wine. He desired Mr. *Hill*, not that he was interested in the house, but, as was explained, had a concern for the interest of the house, had been occasionally an agent, or for reasons was supposed to be a friend, he desired *Hill* to take the wine and keep it till paid for. *West* was not willing to give his note for the wine. *Hill* took it into his possession. *West* entered it and paid duties, but charged *Hill*, who paid afterwards, so that *Hill* became possessed of a special property in this wine, and was to hold it for the *Madeira* house until paid for. After the death of *Hill*, his executor became possessed of this wine, having the same *special* property in it which *Hill* had. The defendant, an executrix of *Stewart*, under some pretence got possession of this wine, without paying for it. The executors of *Hill*, considering her as having got possession wrongfully, bring an action. They might have brought trover, but they have waived the tort, and have laid an assumpsit. The defence set up by the defendant on the trial was, that as executrix of the estate of *Stewart*, she had a right to hold it, the bill of lading and letter of advice having vested the property in *Stewart;* and for this was read, 1 *Lord Ray.* 271. It was laid down in my charge to the jury, that a bill of lading and letter of advice did not vest the interest in the consignee *absolutely;* for in case of the insolvency of a consignee, it might be stopped *in transitu*, and for this I referred to 7 *Mass. Rep.* 453., as a strong case, where the extent of the right to stop is well explained by Chief Justice *Parsons*. But there was no stoppage *in transitu*, for it became unnecessary, the executors declining to accept; the acting executor of *Stewart*, *Hill*, or his representative, was to hold it until paid for. The representatives suffered it to slip out of their possession, and they are themselves answerable to the *Madeira* house. It was not an act of agency by which they lost possession, it was contrary to their trust. They cannot elect to consider it an act of agency, to let the property go without being paid for, and throw the loss, if there should be loss, upon the *Madeira*

house. They have therefore a right to bring their action against the person divesting them of possession without paying for the wine, in the manner that has taken place. The *Madeira* house might elect to take the defendant and bring suit; but they are not bound to do it. They may sue the executors of *Hill*, and charge them with a conversion of the property, or recover the value as money had and received to their use. The *Madeira* house will most probably not elect to take the defendant, because they will be embarrassed with her claim as executrix of the estate of *Stewart*, on the score of it being made the property of *Stewart*, by the bill of lading and the letter of advice. She will plead no assets, the estate being insolvent, and this being alleged to have gone in the mean time, to satisfy other creditors. The *Madeira* house, it is true, may take their chance of proving, as was shewn to be the case here, that the defendant did not obtain the property as executrix, but in her individual capacity, and therefore must be answerable for it without a reference to the estate. But why shall the *Madeira* house be turned round to this, when the justice of the case is already reached, by the executors of *Hill* recovering for the use of their house, as in fact cannot but be supposed to be the case? Costs must be paid before a new action can be brought. The statute of limitations may intervene, and the demand be wholly gone. I did not expect, on a motion for *a new trial*, to hear a motion *in arrest of judgment* argued. For the defence on the trial is deserted, that this wine by the bill of lading became the property of the estate of *Walter Stewart*, and that the defendant, as executrix, had a right to it. The question now made, is whether the principal or agent has a right to bring the action. But it involves no question of agency, when the agent parts with property contrary to his duty, and is answerable for it. He is liable to the principal, and the *supposed* agent may look after the wrongdoer. I say *supposed*, because the agent by negligence makes the act his own, and he is *quoad hoc* no agent. The taking was a matter between the executors of *Hill* and the defendant, and the *Madeira* house are not bound to take any notice of it. The executors of *Hill* cannot elect to say that the *Madeira* house shall take notice of it, but may sue for themselves as they

1812.

WELLS
*v.*
STEWART.

have done in this case. If they recover, they may pay over the money so recovered, and save themselves from a suit. I am therefore of opinion against a new trial, that the action was well brought, and that judgment be upon the verdict.

New trial awarded.

*Philadelphia,*
*Monday,*
December 18.

If between the return of a *ca. sa.* against the principal, and the return of a *sci. fa.* against the bail, the principal is discharged under a bankrupt or insolvent law, the bail are intitled to an *exoneretur.*

*A* is arrested and held to bail in *Pennsylvania* for a debt contracted in the *District of Columbia.* He is afterwards discharged under a general statute of *Maryland,* where he resides, from all his debts, upon the surrender of his property to trustees; and is exempted by a special statute from the necessity of giving notice to his creditors.

*Held* that, as the state of *Maryland* gives effect to a discharge under the law of *Pennsylvania,* the